```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/05/2015
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
WARREN DAVIS,                                                     :
                                                                  :
                              Plaintiff,                          :   14-CV-3675 (JMF)
                                                                  :
              -v-                                                 :   MEMORANDUM OPINION
                                                                  :   AND ORDER
JOHN LEMPKE,                                                      :
                                                                  :
                              Defendant.                          :
                                                                  :
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

  Petitioner Warren Davis seeks a writ of habeas corpus pursuant to Title 28, United States Code, Section 2254.  (Docket No. 2).  Respondent John Lempke, Superintendent of the Wende Correctional Facility, in which Petitioner is incarcerated, now moves to dismiss the petition pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.  (Docket No. 13).  For the reasons that follow, Respondent's motion is GRANTED.

## BACKGROUND

  The following facts are taken primarily from Petitioner's affirmation and the documents attached thereto, and are effectively undisputed.  On July 25, 2008, Petitioner was sentenced principally to a term of imprisonment of nineteen years to life following his conviction for murder in the second degree, robbery, burglary, and criminal possession of a weapon.  (Resp't's Mem. Law Supp. Mot. To Dismiss Pet. Writ Habeas Corpus (Docket No. 15) ("Resp't's Mem.") 2).  The New York Supreme Court, Appellate Division, affirmed Petitioner's conviction on May 24, 2011, *see People v. Davis*, 924 N.Y.S.2d 132 (App. Div. 2d Dep't 2011), and the New York Court of Appeals denied Petitioner leave to appeal on July 27, 2011, *see People v. Davis*, 17

N.Y.3d 805 (2011). Thereafter, on June 21, 2012, Petitioner filed a petition for a writ of error *coram nobis*, which the Appellate Division denied on February 20, 2013. Pet'r's Opp'n Mot. To Dismiss 28 U.S.C. § 2254 Pet. Habeas Corpus (Docket No. 17) ("Pet'r's Mem."), 28. *See People v. Davis*, 959 N.Y.S.2d 460 (App. Div. 2d Dep't 2013).

Shortly after his *coram nobis* petition was denied, Petitioner wrote his attorney, Joseph M. Latino, asking him to appeal the *coram nobis* decision and to prepare to file a federal habeas corpus petition. (Aff. Opp'n Mot. To Dismiss Pet. Writ Habeas Corpus (Docket No. 16) ("Pet'r's Aff."), Feb. 25, 2013 Ltr.). In his letter, Petitioner set forth his understanding of the statute of limitations for filing such a petition, urging Latino "to be very careful with the one year time limit so I do not lose out in being able to file." (*Id.*, Feb. 25, 2013 Ltr., at 2). Counsel advised Petitioner that the *coram nobis* petition tolled the statute of limitations, and that the filing period would remain tolled while he sought leave to appeal the Appellate Division's *coram nobis* decision to the New York Court of Appeals. (Pet.'s Aff., Feb. 28, 2013 Ltr.). In two letters dated the following week, Petitioner reiterated the importance of the statute of limitations — even requesting that, if necessary, Latino file "a rough habeas corpus application just to meet the deadline." (Pet'r's Aff., Mar. 2 & 5, 2013 Ltrs.).

Latino responded by asking Petitioner to "trust me on the course of this litigation, when it comes to the proper procedures. You do not want to see this case denied because of a procedural error." (*Id.*, Mar. 12, 2013 Ltr.). Latino then correctly stated the time remaining to file the federal habeas petition. (*Id.*). He reiterated that understanding in a letter the following week. (*Id*, Mar. 19, 2013 Ltr.). In another letter a few months later, however, Latino — without explanation — changed course, erroneously informing Petitioner that the time to file a federal habeas petition would "start[] to run" after a final judgment on the *coram nobis* petition. (Pet'r's

2

Aff., June 28 2013 Ltr.).  The New York Court of Appeals denied the *coram nobis* petition on July 3, 2013.  *People v. Davis*, 21 N.Y.3d 1015 (2013).  Thereafter, Latino sent Plaintiff two letters that confirmed his erroneous understanding that the limitations period had begun *anew* following the resolution of the *coram nobis* petition.  (Pet'r's Aff., July 6, 2013 & Aug. 29, 2013 Ltrs.).  Petitioner did not respond to any of these letters, let alone inquire why Latino's views had changed.

On February 6, 2014, Petitioner wrote Latino for the first time in nearly a year, informing him that he was "going through hard times with these correctional officers" and would "probably . . . be in the box [*i.e.*, segregated housing] by next week."  (*Id.*, Feb. 6, 2014 Ltr.).  The letter discussed arguments to be made in the habeas petition, but made no reference to the statute of limitations.  (*Id.*).  On May 6, 2014, Latino wrote to inform Petitioner that he had been mistaken about the statute of limitations and that the deadline to file the petition had passed in or about October 2013.  (*Id.*, May 6, 2014 Ltr.).  Latino proposed filing the petition "anyway" and seeking to have the limitations period equitably tolled in light of his error.  (*Id.*).  By letter dated May 9, 2014, Petitioner agreed with Latino's proposal.  (*Id*., May 9, 2014 Ltr.).  In addition, Petitioner expressed appreciation to Latino for candidly acknowledging the "error" and indicated that he would "not be looking for another Lawyer" because he was "pleased with" Latino's "representation":

> I appreciate the way that you expressed to me the error you made. . . . You sta[t]ed the facts and you took responsibility and immediately [w]ent to work on how to correct the error.  I was impressed to see an Attorney (YOU) take the time to express the facts and take full responsibility for their errors.  How could I ask you to leave my case now because of one error[?]  . . . I am pleased with you as my Attorney and you would have to do something worse than that for me to say that there is a problem with your representation.

3

(*Id.*).  Latino filed the petition on May 22, 2014.  (Docket No. 1).[1]

## DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, establishes a one-year limitations period for the filing of a habeas petition by a person in custody pursuant to a state court conviction.  *See* 28 U.S.C. § 2244(d)(1).  As relevant here, the one-year limitation period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  *Id.*  The limitations period is tolled, however, while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  *Id.* § 2244(d)(2).  Applying those rules here, there is no dispute that the present petition is untimely.  Specifically, Petitioner had until November 5, 2013, to file a petition because his conviction became final on October 25, 2011 (when his time to file a petition for the writ of *certiorari* to the United States Supreme Court expired), and there were 125 days remaining when he filed his *coram nobis* petition (which was denied on July 3, 2013).  Petitioner did not file his petition until May 22, 2014, more than six months past the deadline.

Nevertheless, Petitioner argues that this case is one of the "rare and exceptional circumstances," *Green v. United States*, 260 F.3d 78, 82-83 (2d Cir. 2001), in which AEDPA's statute of limitations should be equitably tolled.  (Pet'r's Mem., 1-4).  To be eligible for equitable tolling, Petitioner must show that he "pursu[ed] his rights diligently" and that "some extraordinary circumstance stood in his way and prevented timely filing."  *Holland v. Florida*, 560 U.S. 631, 632 (2010) (internal quotation marks omitted).  When assessing whether a

---

[1]  Citing "an obvious conflict of interest in counsel arguing his own misconduct," co-counsel Anthony Maiocchi represents Petitioner with respect to the issue of equitable tolling.  (Pet'r's Mem., 15 n. 2).

petitioner faced "extraordinary circumstances," courts ask not whether the circumstance was "unusual . . . , but rather how severe an obstacle it [posed] for the prisoner endeavoring to comply with AEDPA's limitations period." *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008). As the Supreme Court and Second Circuit have made clear, attorney error alone "*normally* will not constitute [an] extraordinary circumstance[]." *Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003). Thus, for example, an "ordinary mistake" in applying "the rules [governing] deadlines for filing of habeas petitions" is not considered extraordinary. *Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011) (internal quotation marks omitted); *see Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001) ("[M]iscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling."); *see also Smaldone v. Senkowski*, 273 F.3d 133, 138 (2d Cir. 2001). Instead, to qualify as "extraordinary," the "attorney negligence must be so egregious as to amount to an effective abandonment of the attorney-client relationship." *Rivas v. Fischer*, 687 F.3d 514, 538 (2d Cir. 2012).

Applying those standards, although the Court has some sympathy for Petitioner's predicament, it is compelled to conclude that Latino's sudden misapplication of the statute-of-limitations tolling rules does not rise to the level of "extraordinary circumstances." Latino's blunder was bizarre insofar as he had previously calculated the limitations period correctly, but it is still a mere miscalculation of a deadline, which is precisely "the sort of garden variety attorney error that cannot on its own rise to the level of extraordinary circumstances." *Dillon*, 642 F.3d at 364 (emphasis omitted); *accord Baldayaque*, 338 F.3d at 152. The fact that Latino's error was more "unusual" than a situation in which counsel consistently misinterprets a deadline does not make the case extraordinary. *See Bolarinwa v. Williams*, 593 F.3d 226, 231-32 (2d Cir. 2010). As a result, for AEDPA purposes, Latino's error was materially indistinguishable from other

"garden variety" mistakes, such as when an attorney miscalculates or misapplies AEDPA's statute of limitations. *See, e.g.*, *Romero-Padilla v. United States*, Nos 13-CV-3703 (DLC), 05-CR-1262 (DLC), 2014 WL 774957, at *4 (S.D.N.Y. Feb. 27, 2014) (observing that "miscalculating a deadline" would not amount to "effective abandonment of the attorney-client relationship" (internal quotation marks omitted)); *see also id.* (concluding that to find that an instance of attorney negligence constitutes extraordinary circumstances would "undermine the Supreme Court's statement that there is an 'essential difference' between egregious 'attorney error' and attorney abandonment sufficient to warrant equitable tolling." (quoting *Maples v. Thomas*, 132 S. Ct. 921, 923 (2012)).

The contrast between the facts of this case and the facts in *Baldayaque* and *Dillon*, two cases in which the Second Circuit found that the "extraordinary circumstances" standard had been met, are telling. *Baldayaque* involved "an attorney who willfully ignored the express instructions of his client, did not conduct any legal research on his client's behalf, and never spoke to or met with his client." *Dillon*, 642 F.3d at 363 (describing the facts in *Baldayaque*). In *Dillon*, which the Court of Appeals described as a "close" case, the lawyer "in effect admitted affirmatively and knowingly misleading" his client "by promising him that he would file the petition" by a particular date, and "breached that promise when he failed to follow his client's instruction, with disastrous consequences that [the client] could neither have foreseen nor prevented." *Id.* at 362, 364 (emphasis omitted). Thus, both cases involved "more than a simple miscalculation"; at a minimum, they involved "deeply misleading statement[s]" by the lawyers involved. *Id.* at 364. By contrast, as Petitioner himself acknowledged in his letter of May 9, 2014, this case involved a solitary, albeit inexplicable, "error" on Latino's part; there is no

6

evidence that Latino ever misled Petitioner or otherwise failed to act zealously on his behalf. (Pet'r's Aff., May 9, 2014 Ltr.).

In any event, Petitioner cannot establish that he diligently pursued his rights. To justify equitable tolling, a petitioner must show that he "acted as diligently as reasonably could have been expected under the circumstances." *Harper v. Ercole*, 648 F.3d 132, 139 (2d Cir. 2011); (internal quotation marks and emphasis omitted); *accord Baldayaque*, 338 F.3d at 153. Thus, a showing of reasonable diligence requires more than episodic efforts; the petitioner must demonstrate that he "acted with reasonable diligence *throughout* the period he seeks to toll." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (emphasis added); *accord Harper*, 648 F.3d at 138. Here, Petitioner's early letters did urge Latino to "be very careful with the one year time limit" (Pet'r's Aff., Feb. 25, 2013 Ltr.) and to consider "fil[ing] a rough habeas corpus application just to meet the deadline." (Pet'r's Aff., Mar. 5, 2013 Ltr.). Petitioner failed, however, to display the same degree of diligence throughout the period he seeks to toll. In particular, Petitioner made no effort to correct Latino when he misstated the filing deadline — first in June 2013 (before the New York Court of Appeals denied leave to appeal the *coram nobis* ruling and the statute of limitations resumed running) and then again in both July and August 2013 (at which point several months remained for him to timely file his petition). *Cf. Nickels v. Conway*, 480 Fed. App'x 54, 57 (2d Cir. 2012) (summary order) (suggesting that reasonable diligence prior to the extraordinary circumstances is "not relevant"). Indeed, there is no evidence that Petitioner made *any* effort to respond to Latino's letters or otherwise contact him from March 2013, through the deadline to file a federal habeas petition in November 2013. *Cf. Plowden v. Romine*, 78 F. Supp. 2d 115, 119 (E.D.N.Y. 1999) (holding that petitioner could

not show reasonable diligence when he went seventeen months without contacting his attorney about the status of his petition).

## CONCLUSION

For the foregoing reasons, Respondent's motion to dismiss is GRANTED and the Petition is dismissed as time barred. As Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); *see also, e.g.*, *Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012). In addition, this Court certifies, pursuant to Title 28, United States Code, Section 1915(a)(3), that any appeal from this Order would not be taken in good faith, and *in forma pauperis* status is thus denied. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to terminate Docket No. 13 and to close the case.

SO ORDERED.

Date: February 5, 2015
New York, New York

JESSE M. FURMAN
United States District Judge